# Supreme Court of Texas

No. 23-0023

The University of Texas at Austin and Jay Hartzell, in His
Official Capacity as Interim President
of the University of Texas at Austin,

*Petitioners*,

v.

GateHouse Media Texas Holdings II, Inc.,
d/b/a Austin American–Statesman,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued October 1, 2024**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

In this case the federal Family Educational Rights and Privacy
Act of 1974 (FERPA) and Texas' Public Information Act (PIA) intersect.
The Austin American–Statesman[1] requested that the University of
Texas at Austin disclose the final results of disciplinary hearings

---

[1] The Statesman's parent company is respondent GateHouse Media
Texas Holdings II.

involving sex offenses. The University refused to produce the information without requesting a decision of the Office of the Attorney General (OAG). We hold that the PIA authorized the University's refusal without an OAG opinion and, therefore, that the trial court should have granted the University's motion for summary judgment. We reverse the court of appeals' judgment[2] and render judgment for the University.

# I

## A

FERPA protects student privacy by conditioning the receipt of federal funds on an educational institution's compliance with certain requirements.[3] As relevant here, the act prohibits federal funding of a university with "a policy or practice of permitting the release of education records" without the student's consent.[4] "Education records" are broadly defined as "those records, files, documents, and other materials" that "contain information directly related to a student" and "are maintained by an educational agency or institution".[5] The term

---

[2] 656 S.W.3d 791 (Tex. App.—El Paso 2022).

[3] *See* 20 U.S.C. § 1232g.

[4] *Id.* § 1232g(b)(1). The statute makes an exception for several categories of individuals and entities to whom disclosure without consent is permitted; they include other school officials and certain federal, state, or local government officials. *See id.* § 1232g(b)(1)(A)-(L).

[5] *Id.* § 1232g(a)(4)(A). The term "does not include" certain records enumerated in Section 1232g(a)(4)(B) such as "records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement". *Id.* § 1232g(a)(4)(B)(ii). None of the exclusions apply here.

includes disciplinary records,[6] but the act makes exceptions to the general rule prohibiting their disclosure. Section 1232g(b)(6)(B) authorizes a university to disclose to a third person the final results of a disciplinary proceeding arising from an allegation that a student committed a crime of violence or nonforcible sex offense if the university determines that the allegation has merit:

> Nothing in this section shall be construed to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student who is an alleged perpetrator of any crime of violence . . . or a nonforcible sex offense, if the institution determines as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense.[7]

If an institution chooses to disclose the final results of a disciplinary proceeding in accordance with this exception, those results "shall include only the name of the student, the violation committed, and any sanction imposed by the institution on that student".[8] The results "may include the name of any other student, such as a victim or witness, only with the written consent of that other student."[9]

---

[6] *See id.* § 1232g(h)(1).

[7] *Id.* § 1232g(b)(6)(B).

[8] *Id.* § 1232g(b)(6)(C)(i).

[9] *Id.* § 1232g(b)(6)(C)(ii).

**B**

**1**

Texas' PIA reflects "the policy of this state" that the public "is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees."[10] The act states that it "shall be liberally construed in favor of granting a request for information."[11]

Subchapter B provides the general rule of disclosure. Under Section 552.021, "[p]ublic information is available to the public at a minimum during the normal business hours of the governmental body."[12] Public information is "information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business"[13] but does not include information "made confidential under this chapter or other law."[14] Subchapter B expressly recognizes FERPA's primacy; Section 552.026 provides that the PIA "does not require the release of information contained in education records of an educational agency or institution, except in conformity with [FERPA]."[15]

---

[10] TEX. GOV'T CODE § 552.001(a).

[11] *Id.* § 552.001(b).

[12] *Id.* § 552.021; *see also id.* § 552.221(a) ("An officer for public information of a governmental body shall promptly produce public information for inspection, duplication, or both on application by any person to the officer.").

[13] *Id.* § 552.002(a).

[14] *Id.* § 552.022(a).

[15] *Id.* § 552.026.

The PIA makes exceptions to the general rule of disclosure in Section 552.021, and many are in Subchapter C. The Legislature, through the PIA or other law, has designated certain kinds of information to be "confidential".[16] Confidential information must not be disclosed. Under Section 552.101, "[i]nformation is excepted from the requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision."[17] Moreover, the act makes it a misdemeanor crime—punishable by fine, confinement, or both—to "distribute[] information considered confidential under the terms of [the PIA]."[18] An example of information made confidential by the PIA is a "sensitive crime scene image in the custody of a governmental body".[19] The act makes such an image "confidential and excepted from the requirements of Section 552.021" while enumerating certain persons, such as "the deceased person's next of kin", who are permitted to view the image.[20]

The PIA excepts other kinds of information from disclosure without making the information confidential.[21] The Legislature has

---

[16] *See Tex. Comptroller of Pub. Accts. v. Att'y Gen. of Tex.*, 354 S.W.3d 336, 359 (Tex. 2010) (Wainwright, J., dissenting).

[17] TEX. GOV'T CODE § 552.101. However, the act authorizes a governmental body to release confidential information about a person to that person or the person's representative. *Id.* § 552.023(a).

[18] *Id.* § 552.352(a), (b).

[19] *Id.* § 552.1085(c).

[20] *Id.* § 552.1085(c), (d).

[21] *See Comptroller*, 354 S.W.3d at 359-360 (Wainwright, J., dissenting).

given the governmental body discretion to disclose information in this category even though disclosure is not required. Section 552.007 states that the PIA "does not prohibit a governmental body . . . from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law."[22] Thus, the PIA "creates three distinct categories of public information—information required to be disclosed, information excepted from mandatory (but not voluntary) disclosure, and confidential information that is prohibited from disclosure and subject to criminal penalties."[23]

**3**

Subchapter C includes an exception for student records in Section 552.114. The section is titled, "Exception: Confidentiality of Student Records." Subsection (a) defines a student record to include an education record under FERPA.[24] Subsection (b) contains two sentences. The first makes information in a student record at a state-funded educational institution "confidential and excepted from the requirements of Section 552.021".[25] The second sentence states that

---

[22] TEX. GOV'T CODE § 552.007(a).

[23] *Comptroller*, 354 S.W.3d at 360 (Wainwright, J., dissenting).

[24] TEX. GOV'T CODE § 552.114(a)(1). The definition also includes "information in a record of an applicant for admission to an educational institution, including a transfer applicant." *Id.* § 552.114(a)(2).

[25] *Id.* § 552.114(b).

"[t]his subsection *does not prohibit the disclosure*" of a student record if it "is authorized by [FERPA] or other federal law."[26]

Subsection (c) clarifies that "[a] record covered by Subsection (b) shall be made available on the request of" three categories of people: "(1) educational institution personnel; (2) the student involved or the student's parent, legal guardian, or spouse; or (3) a person conducting a child abuse investigation" under the Family Code.[27] Subsection (d), which we discuss below, addresses the institution's authority to "redact information covered under Subsection (b)".[28] Subsection (e) specifies that "[i]f an applicant for admission to an educational institution described by Subsection (b)"—or a parent or guardian of a minor applicant—"requests information in the record of the applicant, the educational institution shall disclose any information" related to the applicant's application that was provided to the institution by the applicant.[29]

**4**

There is a hoop a governmental body potentially must jump through before withholding information as excepted from the general rule of disclosure. Under Section 552.301, if a governmental body "wishes to withhold [information] from public disclosure" and "considers [the information] to be within one of the exceptions under Subchapter C", the body "must ask for a decision from the attorney

---

[26] *Id.* (emphasis added).

[27] *Id.* § 552.114(c).

[28] *Id.* § 552.114(d).

[29] *Id.* § 552.114(e).

general about whether the information is within that exception".[30] But it must do so only "if there has not been a previous determination about whether the information falls within one of the exceptions."[31] And there is at least one more caveat: under Section 552.114(d), and "[e]xcept as provided by Subsection (e)" of that provision, "an educational institution may redact information covered under Subsection (b) from information disclosed under Section 552.021 without requesting a decision from the attorney general."[32]

When an OAG decision is required, the governmental body "must ask for the attorney general's decision and state the exceptions that apply within a reasonable time but not later than the 10th business day after the date of receiving the written request."[33] There are additional statutory requirements related to the governmental body's request for an OAG decision.[34] Under Section 552.302, "[i]f a governmental body does not request an attorney general decision as provided by Section 552.301" and does not comply with other requirements of that section, "the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information."[35]

---

[30] *Id.* § 552.301(a).

[31] *Id.*

[32] *Id.* § 552.114(d).

[33] *Id.* § 552.301(b).

[34] *See id.* § 552.301(d)-(g).

[35] *Id.* § 552.302.

**5**

The PIA provides a mechanism to have a dispute over its provisions settled in court. In Section 552.321, the act authorizes "[a] requestor or the attorney general" to "file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision . . . or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure".[36] "A suit filed by a requestor . . . must be filed in a district court for the county in which the main offices of the governmental body are located."[37]

## II

## A

On August 30, 2019, the executive editor of the Statesman emailed University President Gregory Fenves and Senior Vice President–Chief Financial Officer Darrell Bazzell a request for the "final results" of certain disciplinary hearings conducted by the University since 2014. Quoting FERPA Section 1232g(b)(6)(B)-(C), the request sought the results of hearings involving any student "in which it was determined that the student is either 'an alleged perpetrator of a crime of violence,' including forcible sex offenses, or 'an alleged perpetrator of a nonforcible sex offense,'" and in which the University determined that the student violated its rules or policies:

This is a request under the Texas Public Information Act

---

[36] *Id.* § 552.321(a).

[37] *Id.* § 552.321(b).

for disclosure of public records. It is made on behalf of the Austin American–Statesman newspaper and its parent company, GateHouse Media.

This request seeks "final results" of all disciplinary hearings conducted by your institution into any student since Jan. 1, 2014, in which it was determined that the student is either "an alleged perpetrator of a crime of violence," including forcible sex offenses, or "an alleged perpetrator of a nonforcible sex offense," and with respect to the allegation made against him or her, the student has committed a violation of your institution's rules or policies. The "final results" should include only:

- The name of the student;

- The violation committed, meaning the institutional rules or code sections that were violated and any essential findings supporting the institution's conclusion that the violation was committed; and

- Any sanction imposed by your institution against the student, meaning a description of the disciplinary action taken by the institution, the date of its imposition, and its duration.

Disclosure of these records furthers the public interest and is important for our newsgathering. As such, we request that they be made available promptly . . . .

More than two weeks later, on September 16, 2019, the University's open records coordinator responded by email that FERPA does not require disclosure of the records requested and that the University was declining to provide them:

This email is provided in final response to your below request to The University of Texas at Austin. The Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, does not require The University to disclose any student information that is responsive to your request, and we decline to do so. Thank you.

10

The University did not request an OAG decision before responding.[38]

**B**

The Statesman sued the University under Section 552.321, seeking a writ of mandamus compelling the University to provide the records requested. Both sides filed traditional motions for summary judgment. The trial court granted the Statesman's motion and denied the University's. In a letter to the parties, the court reasoned that the University was required to seek an OAG decision and that its failure to do so raised the presumption that the information is subject to disclosure absent a compelling reason to withhold it. The court found no compelling reason for the University to withhold the records.

The Statesman filed a motion for attorney fees under PIA Section 552.323(a), which requires the court to "assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails" unless "the court finds that the governmental body acted in reasonable reliance on" a court order or attorney general decision.[39] The court declined that request, concluding that the University relied on a plausible interpretation of the PIA, and rendered a final judgment.

A divided court of appeals affirmed the part of the judgment requiring the University to produce the requested information.[40] The majority held that under Section 552.302, the University did not

---

[38] The University requested an OAG decision months later while litigation was already pending. We address OAG's response in Part IV.

[39] TEX. GOV'T CODE § 552.323(a).

[40] 656 S.W.3d 791.

11

establish a "compelling reason" for withholding the requested information in the face of its failure to request an OAG decision.[41] This holding was based on its conclusion that Section 552.114(b) does not give the University discretion to withhold the requested records. The majority recognized that the section's "first sentence, if it was standing alone, would create a complete prohibition on disclosing any information within a student record."[42] But the majority read the second sentence as "an exception to the exception provided in the first sentence"[43] and reflective of the Legislature's intent "to clarify that the exception or prohibition does not apply to information authorized for disclosure by FERPA or other federal law."[44] The majority opined that construing Section 552.114(b) this way is consistent with the PIA's policy statement that the act should be liberally construed in accordance with "the PIA's underlying purpose".[45]

The majority went on to hold that the trial court abused its discretion by denying the Statesman's request for attorney fees, reversed that part of the trial court's judgment, and remanded.[46] The only reference to Section 552.026 in its opinion is in a citation to several PIA provisions that "provide explicit exceptions to the disclosure

[41] *See id.* at 803-806.

[42] *Id.* at 805.

[43] *Id.* at 804.

[44] *Id.* at 805.

[45] *Id.*

[46] *Id.* at 808.

requirement."[47] The majority did not analyze the section's applicability to this case.

Justice Alley dissented. He recognized that "the PIA contains two sections addressing the confidentiality of student records," Section 552.026 and Section 552.114.[48] He acknowledged that "neither section expressly addresses whether final-results information is subject to mandatory release or not."[49] But after working through the language of each section, he concluded that neither section requires release of the information requested by the Statesman.

Justice Alley pointed to the language in Section 552.026 providing that the PIA does not require release of education records "except in conformity with [FERPA]." Citing to a dictionary definition of *conformity*, he reasoned that "[b]y requiring 'conformity' with FERPA, this section of the PIA only requires a state funded educational institution to release information in a student's educational record when FERPA correspondingly requires its release—such as when the information is requested by a parent."[50] "[B]ecause FERPA does not require the release of final-results information to third parties," he concluded, "neither does section 552.026 require its release."[51]

Turning to Section 552.114, Justice Alley noted that subsection (b)'s first sentence makes education records "confidential and

---

[47] *Id.* at 799.

[48] *Id.* at 810 (Alley, J., dissenting).

[49] *Id.* (Alley, J., dissenting).

[50] *Id.* (Alley, J., dissenting).

[51] *Id.* at 811 (Alley, J., dissenting).

excepted from the requirements of Section 552.021".[52] Section 552.114, through subsections (c) and (e), "sets forth only four situations in which disclosure is required": a request made by an educational institution, by a student or the student's parent or spouse, by a person conducting a child-abuse investigation, and by an applicant for admission.[53]

Justice Alley characterized the second sentence of subsection (b) as "a catch-all provision . . . that mimics the permissive language used in FERPA for information requested by other individuals or entities not in the above list."[54] Noting its "does not prohibit" language, he reasoned that just as FERPA authorizes but does not require the release of final-results information, "section 552.114(b) also simply gives an educational institution the discretion to release final-results information in redacted form."[55] He added:

> Had the legislature intended to require the release of such information, it knew how to do so, as it used mandatory language when requiring the release of information to certain specified categories of requestors, and it could have easily included a section requiring the mandatory release of final-results information as well, but chose not to.[56]

Justice Alley went on to consider whether the University was required to seek an OAG decision. He opined that it was not because OAG has previously determined "that an OAG decision is unnecessary

---

[52] *Id.* (Alley, J., dissenting) (quoting TEX. GOV'T CODE § 552.114(b)).

[53] *Id.* (Alley, J., dissenting).

[54] *Id.* (Alley, J., dissenting).

[55] *Id.* (Alley, J., dissenting).

[56] *Id.* at 811 n.2 (Alley, J., dissenting).

when an educational institution decides to withhold educational records protected by FERPA."[57] We granted the University's petition for review.

## III

We start by examining whether the PIA requires the University to disclose the final-results records requested by the Statesman. The parties have focused their arguments on Section 552.114(b). They agree that its first sentence, standing alone, makes information in a disciplinary record confidential and excepted from disclosure. But they dispute the effect of its second sentence: "This subsection does not prohibit the disclosure or provision of information included in an education record if the disclosure or provision is authorized by [FERPA]".[58] The Statesman urges the interpretation adopted by the court of appeals' majority: this second sentence negates the first one with respect to any information that FERPA authorizes to be disclosed, with the result that disclosure of such information is required under Section 552.021. The University argues that "does not prohibit disclosure" cannot mean "requires disclosure".

We need not determine the exact meaning of Section 552.114(b) here. As we frequently explain, statutory text must always be read in the context and framework of the entire statute.[59] The context and

---

[57] *Id.* at 812 (Alley, J., dissenting).

[58] TEX. GOV'T CODE § 552.114(b).

[59] *See, e.g.*, *Pub. Util. Comm'n of Tex. v. Luminant Energy Co.*, 691 S.W.3d 448, 460 (Tex. 2024) ("We discern a statute's objectives from its plain text. That text must always be read in context—not isolation. We give meaning to every word in a statute, harmonizing each provision, while considering the

framework of the PIA includes Section 552.026, which states that "[t]his chapter"—meaning the entire PIA, which includes Sections 552.021 and 552.114—"*does not require the release* of information contained in education records of an educational agency or institution, except in conformity with [FERPA]."[60] Whatever Section 552.114(b) means precisely, it cannot be read to conflict with Section 552.026.

The Statesman argues that "except in conformity with" means "except where release is allowed by FERPA", so Section 552.026 imposes a disclosure obligation in this case. This argument fails the plain-language test. "In conformity with" means in harmony, agreement, or congruity with.[61] Because FERPA's Section 1232g(b)(6)(B) permits but does not require disclosure of the information, the University may elect to disclose it or withhold it, and either choice will be "in conformity with" FERPA. As a result, Chapter 552 (including Sections 552.021 and 552.114) "does not require the release of [the] information".[62] We agree with the court of appeals' dissent on this point.

Finally, and echoing the court of appeals' majority, the Statesman argues that the PIA's "general purpose" and its opening statement that the act should be "liberally construed in favor of granting a request for

---

context and framework of the entire statute, in order to meld its words into a cohesive reflection of legislative intent." (cleaned up)).

[60] TEX. GOV'T CODE § 552.026 (emphasis added).

[61] *Conformity*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1966).

[62] *See* TEX. GOV'T CODE § 552.026.

information"[63] require the interpretation it urges. We disagree. Neither the PIA's purpose nor its directive that the act be liberally construed in favor of disclosure overcomes the courts' obligation to construe statutory text by its plain language.[64]

We hold that Section 552.026 grants an educational institution discretion whether to disclose information in an education record if the disclosure is authorized by FERPA. The court of appeals thus erred by construing the PIA to require mandatory disclosure of such information.

**IV**

The remaining issue is whether disclosure is nonetheless required because the University did not timely seek an OAG decision under Section 552.301(a). As we noted earlier, this section requires an OAG decision only if the governmental body "considers [the information requested] to be within one of the exceptions under Subchapter C".[65] Section 552.026 is in Subchapter B, not Subchapter C. So Section 552.301(a) does not apply.

There are other statutory clues that an OAG decision is not required here. If Section 552.114(b) authorizes the University to withhold the requested information, as it argues and the court of appeals' dissent concluded, then the redaction provision in Section 552.114(d) may negate the obligation to seek an OAG decision

---

[63] *Id.* § 552.001(b).

[64] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 35 (2012) ("While such provisions as a preamble or purpose clause can clarify an ambiguous text, they cannot expand it beyond its permissible meaning.").

[65] TEX. GOV'T CODE § 552.301(a).

before withholding documents under Section 552.114(b). It states that "an educational institution may redact information covered under Subsection (b) from information disclosed under Section 552.021 without requesting a decision from the attorney general."[66] The University reasons that any production it would make to the Statesman would consist of pages of black bars without any text and that producing pages of black bars to the Statesman without seeking an OAG decision is the same as producing nothing without seeking an OAG decision.

The Statesman responds that the dictionary definition of "redact"[67] and the statute's inclusion of the words "from information disclosed under Section 552.021"[68] presuppose that some records are being produced under the general rule. If none are, the Statesman argues, then subsection (d) does not apply, and an OAG decision must be sought. Although the Statesman's textual argument has intuitive appeal, it does not work in the context of the entire statute.

Section 552.301(e) requires that a governmental body requesting an OAG decision submit with its request certain information that OAG needs to make its decision, including "a copy of the specific information requested" or "representative samples of the information if a voluminous amount of information was requested".[69] But in a 2006 letter from the

---

[66] *Id.* § 552.114(d).

[67] *Redaction*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[t]he careful editing of a document, esp. to remove confidential references or offensive material"); *see also* 656 S.W.3d at 802 (providing dictionary definitions).

[68] TEX. GOV'T CODE § 552.114(d).

[69] *Id.* § 552.301(e)(1)(D); *see also id.* § 552.303.

U.S. Department of Education to OAG, the Department communicated that "FERPA does not permit an educational agency or institution in Texas to disclose, without parental consent, education records to the OAG for the purpose of determining whether it has complied with the PIA or whether it has redacted more than is necessary under FERPA."[70] Since receiving that letter, OAG has refused to review education records submitted under Section 552.301 without parental consent (or consent of the student if over 18).

The University ultimately requested an OAG decision in March 2020, while litigation in the trial court was ongoing. OAG responded that, in accordance with the Department's 2006 letter, it would not review unredacted education records—or even redacted education records to determine whether the redactions comply with FERPA—and that it would "not address your argument under [S]ection 552.114 of the Government Code." OAG continued: "Because the DOE has determined that educational agencies and institutions are in the best position to make determinations under FERPA, such agencies and institutions may withhold from public disclosure personally identifiable information in education records without the necessity of requesting an attorney general decision." This letter is consistent with OAG's *Public Information Handbook*, which explains that "the attorney general will not address the applicability of FERPA to any records submitted as part of a request for decision. Such determinations under FERPA must be

---

[70] *Letter to Texas Attorney General*, U.S. DEP'T OF EDUC. 5 (July 25, 2006), https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/20060725-USDOE-FERPA.pdf.

made by the educational authority in possession of the education records."[71]

These policy documents reflect that if the University had timely requested an OAG decision on the Statesman's request, OAG would not have reviewed the submission. In these circumstances, we agree with the University that Section 552.114(d) negates its obligation to seek an OAG decision before withholding information under Section 552.114(b).

We hold that the University was not required to seek an OAG decision before withholding the information requested by the Statesman.[72]

*     *     *     *     *

The University established its entitlement to judgment as a matter of law. We reverse the court of appeals' judgment and render judgment for the University.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** December 31, 2024

---

[71] *Public Information Act Handbook 2018*, OFF. OF THE ATT'Y GEN. OF TEX. 119, https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/2018_Public-Information-Handbook.pdf.

[72] Because we conclude that the University was not required to seek an OAG decision under Section 552.301(a), we need not address whether it had a compelling reason to withhold the documents under Section 552.302. Our disposition also renders the University's challenge to the court of appeals' judgment on attorney fees inapposite.